IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 05-48** |
| | ) | **ELECTRONICALLY FILED** |
| KEDREN BROADUS | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**September 13, 2005**

**I.      Findings of Fact**

1. On February 10, 2005, City of Pittsburgh Police Officers Robert Pires (Officer Pires) and Robert Kavals (Officer Kavals) were working in plain clothes capacity and driving an unmarked car in the Homewood section of the City of Pittsburgh.

2. Because the Homewood section of Pittsburgh is a high crime and drug trafficking area, Officer Pires and Kavals were dispatched to that area, where their routine patrol focused on narcotics, guns and other types of violations.

3. Officer Kavals has nine years of experience as a City of Pittsburgh Police Officer.  In his nine years as a police officer, Kavals has made approximately 300 drug arrests, with over 80% involving crack cocaine.

4. Officer Pires has twenty-three years of experience as a City of Pittsburgh Police Officer, has worked as a narcotics detective for eleven years, and has been involved in several thousand drug arrests, including those involving crack cocaine.

5. On the evening of February 9, 2005, Bryan Otic Mickens (Mickens) received a telephone call from defendant to inquire about Mickens giving him a ride to Westmoreland

County.

6. At approximately 12:18 a.m., Mickens was driving a maroon Oldsmobile with defendant in the front passenger seat and Anthony Giles (Giles) in the rear passenger seat.

7. At that same time, Officers Kavals and Pires were traveling south on Brushton Avenue when they observed a maroon Oldsmobile sedan in front of them that failed to stop at a stop sign posted at the intersection of Brushton Avenue and Monticello Street.[1]

8. The offices continued to follow the Oldsmobile, which stopped at the next posted stop sign beyond the intersection of Brushton Avenue and Monticello Street. The officer then observed the Oldsmobile's vehicle registration sticker, which showed an expired registration of January 2005.

9. The officers then continued to follow the Oldsmobile for approximately two to three minutes, during which time Officer Pires contacted the City of Pittsburgh Police indexing with the vehicle registration information, which confirmed that the vehicle was registered to Mickens and that the registration expired in January 2005.[2]

10. Meanwhile, Mickens made a left turn onto Frankstown Avenue off of Brushton, continued eastbound away from the center of Homewood, made a right turn onto Tokay Street, and made a left turn onto Frankstown Avenue.

---

[1] Defendant disputes this contention and cites to the testimony of Mickens that he did stop at that stop sign. This Court finds the testimony of Officer Kavals and Pires to be more credible.

[2] Defendant alleges that because the indexing was printed at 12:33 a.m. that indicates that Officer Pires did not run the index until after the vehicle was pulled over. The Court disagrees. Simply because the index was not actually printed, does not mean the indexing was not conducted before the officers stopped the vehicle. The officers testified to the contrary and this Court finds their testimony on this point to be credible.

11. "Failure to Stop at a Posted Stop Sign" and "Driving an Unregistered Vehicle" are violations of the Pennsylvania Motor Vehicle Code at 75 Pa.C.S. § 3323(b) and 75 Pa.C.S. § 1301(a), respectively.

12. At approximately 12:21 a.m., the officers initiated a traffic stop of the Oldsmobile in the area of 8326 Frankstown Avenue.

13. Upon stopping the Oldsmobile, the officers put a call out over the police radio that a traffic stop was being conducted involving more occupants in the stopped vehicle than the number of police officers on the scene.

14. Officer Pires exited the passenger side of the blue Lumina and approached the driver's side of the Oldsmobile. He requested that Mickens, the driver of the vehicle, turn off his engine, and Mickens complied.

15. Officer Kavals remained in the vehicle and once Officer Pires signaled that the vehicle had been turned off, Officer Kavals then approached the passenger side of the vehicle.

16. The area in front of 8326 Frankstown Road was illuminated with street lights, and additionally, Officer Pires shone his flashlight into the interior of the Oldsmobile.

17. Officer Pires asked Mickens for his license and registration, which he gave to Pires. As Officer Pires spoke with Mickens, defendant leaned forward while watching Pires.

18. Meanwhile, Officer Kavals was on the passenger's side of the vehicle, and while Officer Pires told Mickens that he was being pulled over for failure to stop at a stop sign and for an expired registration, Kavals shone his flashlight into the passenger compartment, specifically on defendant's hands, as it was his practice to watch the hands of a car's occupants to identify any potential threat to the safety of the officers.

19. From his vantage point outside the car, Officer Kavals was able to observe the defendant and his actions.

20. Using his flashlight to illuminate defendant's hands, Officer Kavals observed defendant put two clear plastic sandwich bags containing large chunks of a white substance into a red McDonald's french fry container. The chunks were approximately the size of a racquetball.

21. Officer Kavals then observed defendant place the french fry container into a McDonald's bag and drop it on the floor. (According to Mickens, defendant had the McDonald's bag with him when he entered the vehicle).

22. After observing defendant's actions, Officer Kavals waited for backup to arrive. Soon thereafter, City of Pittsburgh Police Narcotics and Vice Sergeant Jason Snyder and Detectives Edward Fallert and Joseph Lewis arrived at the scene.

23. Detective Fallert walked toward the driver's side and Detective Lewis and Sergeant Snyder approached on the passenger side.

24. Officer Kavals apprised the responding officers of the situation and of the defendant's possession of the crack cocaine. Kavals then asked defendant to step out of the vehicle, at which time he was placed under arrest and handcuffed.

25. Detective Lewis searched defendant incident to arrest and recovered several items, including a small clear plastic baggie containing 1.716 grams of crack cocaine, two cellular phones, and a digital scale with .051 grams of crack cocaine residue.

26. Sergeant Snyder then searched the interior of the vehicle and recovered the McDonald's bag from the car's front passenger's side floor, which contained two clear plastic bags of crack cocaine (27.6 grams and 21.38 grams) and one clear plastic bag of powder cocaine

(18.12 grams).

27. During the search of defendant and the vehicle, Officer Pires asked Mickens to step out of the vehicle and he performed a pat down search. Mickens was not handcuffed then or at any time during the traffic stop. Although Mickens did not receive a written warning, he was given a verbal warning about the stop sign and expired registration.

28. The defendant was then transported to the Allegheny County Jail by Pittsburgh Police Officer Kenney and Ross.

29. During defendant's processing at the jail, Corrections Officer John Colbert told the defendant to empty his pockets. When the officer removed an additional clear plastic baggie containing 25.40 grams of crack cocaine from defendant's right front jacket pocket, defendant stated, "that's not my ounce." Tr. 16.

## II.     Conclusions of Law

### A.     Vehicle Stop

1. The United States Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996), *citing Delaware v. Prouse*, 440 U.S. 648, 659 (1979).

2. Because this Court has found that Officers Pires and Kavals witnessed Mickens violating two traffic laws under the Pennsylvania Motor Vehicle Code, (stop sign violation and driving an unregistered vehicle), Officers Pires and Kavals possessed the requisite probable cause to believe that a traffic violation had occurred.

3. Accordingly, the stop of Mickens on October 10, 2004 was supported by probable

cause and was therefore constitutionally permissible.

**B. Arrest of Defendant**

1. Based upon the facts set forth hereinabove, including that Officer Kavals witnessed defendant stuffing the McDonald's bag with what appeared to be crack cocaine, the Pittsburgh Police Officer possessed probable cause to arrest the defendant.

2. Probable cause exists whenever reasonably trustworthy information or circumstances within a police's officer knowledge are sufficient to warrant a prudent person to conclude that an offense has been committed by the person being arrested. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). The validity of an arrest is determined by the law of the state where the arrest occurred. *Ker v. California*, 374 U.S. 23, 37 (1963).

3. "The determination of whether probable cause exists for a warrantless arrest is fundamentally a factual analysis which that be performed by the officers at the scene." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984). It is this Court's duty to determine whether the objective facts available to these officers at the time of defendant's arrest were sufficient to justify a reasonable belief that an offense was being committed. *Id.*

4. This Court finds that Officer Kavals possessed the requisite "reasonably trustworthy information" to conclude that a drug offense had been committed by defendant, and accordingly, Officer Kavals properly placed defendant under arrest. *Beck*, 379 U.S. at 91.

**C. The Vehicle Search**

1. The general rule is that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

2. There are, however, exceptions to that rule. One well-established exception, entitled the "automobile exception," provides that the police may conduct a warrantless search of a car, provided that they have probable cause to believe that the vehicle contains evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 158-59 (1925).

3. The probable cause requirement is met, where, as here, the police officer has probable cause to believe that there is contraband inside. *United States v. Burton*, 288 F. 3d 91, 100-101 (3d Cir.), *cert. denied*, 537 U.S. 1039 (2002).

4. Here, the search of the subject vehicle (and defendant's person) was constitutionally permissible on the basis of the automobile exception. As the United States Supreme Court has explained, "the scope of the warrantless search authorized by [this] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

5. Therefore, even without a warrant, Sergeant Snyder's search of the McDonald's bag on the front passenger side floor in the car, and seizure of the crack cocaine, was constitutionally permissible, based on Officer Kaval's observation of the defendant in possession of the contraband.

6. In addition to being a constitutionally valid search, pursuant to the automobile exception, the search of the defendant's person, and the subject vehicle, was a lawful search incident to a valid arrest. *Thornton v. United* States, 541 U.S. 615 (2004); *Chimel v. California*, 395 U.S. 752 (1969).

7. Accordingly, the evidence recovered pursuant to the search of defendant's person and the vehicle is admissible, and therefore, will not be suppressed.

**D. Defendant's Statement at the Allegheny County Jail**

1. *Miranda* requires that an individual be informed of his rights by the police when both "custody" and "interrogation" are present. *Miranda v. Arizona*, 384 U.S. 436 (1966).

2. "Interrogation" includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

3. In *United States v. Benton*, the United States Court of Appeals for the Third Circuit held that a police officer's act of telling a defendant, who was in custody, that he would be charged with a crime and that the police had evidence linking him to a weapon did not constitute custodial interrogation necessitating *Miranda* warnings. *United States v. Benton*, 996 F.2d 642, 643 (3d Cir. 1993).

4. Guided by *Benton*, this Court also finds that although defendant was in custody, he was not subject to police interrogation, or its functional equivalent and therefore, his statement that it "wasn't [his] ounce" was a voluntary statement in response to the recovery of the baggie of crack cocaine discovered in his jacket during his processing. Accordingly, defendant's statement will not be suppressed.[3]

---

[3] The Court notes that defendant does not explicitly raise the issue of suppression of this statement in his motion to suppress. Nonetheless, in the interests of efficiency and to forestall the filing of a second motion to suppress this statement, this Court has ruled on the admissibility of defendant's statement.

### III.     Conclusion

For the reasons set forth hereinabove, defendant's motion to suppress physical evidence (doc. no. 23) will be DENIED.  An appropriate order follows.


                                                                    s/Arthur J. Schwab
                                                                    Arthur J. Schwab
                                                                    United States District Judge

cc:     All counsel of record as listed below

Scott W. Brady, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, PA 15219

Marvin Miller, Esquire
2324 McNary Blvd.
Pittsburgh, PA 15235

United States Marshal Office
United States Probation Office

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 05-48** |
| | ) | **ELECTRONICALLY FILED** |
| **KEDREN BROADUS** | ) | |

## ORDER OF COURT

For the reasons set forth in the accompanying findings of fact and conclusions of law, **IT IS HEREBY ORDERED** that defendant's motion to suppress physical evidence (document no. 23) is **DENIED**.

**SO ORDERED** this 13th day of September, 2005

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record as listed below

Scott W. Brady, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, PA 15219

Marvin Miller, Esquire
2324 McNary Blvd.
Pittsburgh, PA 15235

United States Marshal Office
United States Probation Office